In the Matter of Esther Insel (Also Known as Esther Insel Paley), an Attorney, Respondent.

First Department, June 21, 1940.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Aaron William Levy*, for the respondent.

Martin, P. J. The Association of the Bar of the City of New York charged the respondent with professional misconduct. An official referee to whom the matter was referred has found her guilty of inducing a client, Kathe Palmberger, to falsely place the location of an accident and of inducing Miss Palmberger to persuade her friend, Miss Bender, to falsely state that she was a witness thereto. The respondent also induced both her client and the latter's friend to sign false statements with reference to the claim and requested them to testify falsely on the trial. The referee also found that the respondent attempted to obstruct the Accident Fraud Bureau's investigation by requesting Miss Palmberger to give false testimony when she appeared before that bureau.

On October 24, 1935, Kathe Palmberger, while on her way to work, slipped and fell while descending the stairs leading from

the sidewalk into the Interborough Rapid Transit Company subway station at Eighty-sixth street and Lexington avenue, New York city. She was injured, but succeeded in reaching the express train platform and then rode to Forty-second street, where an ambulance was called. Miss Palmberger informed a police officer and two employees of the railroad company that she had been injured while descending the stairs to the Eighty-sixth street station. Unable to proceed to her place of employment, Miss Palmberger went home. Upon arriving there she found a telephone message requesting her to call the home of the respondent on the telephone. She had previously been employed by respondent's mother as a domestic. She telephoned as requested and respondent's sister said that her mother wished to re-employ her. Miss Palmberger then stated that she had fallen down the stairs at the Eighty-sixth street station and as a result was unable to work. The respondent then came to the telephone and Miss Palmberger explained to her how she had fallen. The respondent said, " Well, don't speak too much, come over and see me. That is going to be a nice case."

A day or two later Miss Palmberger called· on the respondent and again told how the accident had happened. The respondent thereupon suggested that Miss Palmberger change her statement in order " to make a better case out of it." Miss Palmberger said she did not care to do that but the respondent told her not to worry but to leave everything to her, as she knew what to do; and inquired if Miss Palmberger had the names of any witnesses. When informed she had not, the respondent suggested that she obtain the help of Emma Bender whom she thought was Miss Palmberger's sister. Miss Palmberger then explained that Miss Bender was a friend, but not her sister, and furthermore she did not believe Miss Bender would testify. The respondent persuaded Miss Palmberger to promise to speak to Miss Bender and stated that if Miss Bender would not agree to act as a witness, then Miss Palmberger should endeavor to get some other person.

About a week or two after the conversation described above, Miss Palmberger again visited the respondent who requested her to sign a statement which had been prepared and stated that it would make a better case to claim that she had fallen into the space between the station platform and the train. Miss Palmberger protested and stated that she preferred to have the statement set forth the true facts. The respondent said, " Just stick to what I tell you and forget all about the real way it happened." Miss Palmberger said she did not think she could do that, that if it came to testifying she would tell the truth. The respondent

assured her that nothing would happen and asked her not to talk to anybody else and then said, " Just leave it to me."

Miss Palmberger then signed the statement which had been prepared by the respondent. She took a second statement, also prepared by the respondent, to her friend, Emma Bender, and told her that the respondent said she " should sign it and just stick to what it says in there and don't talk to anybody and nothing can happen." Miss Bender signed it and Miss Palmberger returned it to the respondent. The latter sent the statements to an attorney named Morrison P. Paley to whom the respondent was subsequently married. Mr. Paley had photostatic copies made of the statements and sent them to the railroad company. He thereafter prepared and served an unverified complaint on this fabricated claim, in which he appeared as attorney of record. Mr. Paley later consented to have his name stricken from the roll of attorneys rather than face charges arising out of this matter.

When the case was being prepared for trial, the respondent again warned Miss Palmberger and Miss Bender never to mention that Miss Palmberger had fallen down stairs. Miss Palmberger told the respondent that she had been told that so often that she had nearly forgotten it herself. Miss Bender said she wanted to get out of the case and she said to the respondent, " Miss Insel, you know I am not a witness and I am no good at lying. You should have picked somebody else but not me. I can't go through with it." Miss Insel, the respondent, reassured Miss Bender, saying, " Just stick to that story I told you. Nothing can happen to you."

The respondent then suggested that they go over to the subway station so that she could show Miss Palmberger and Miss Bender the spot where they should say Miss Palmberger had fallen. The three women were accompanied by their husbands. (Each had married after the date on which this accident had occurred but to avoid confusion their maiden names are used throughout this opinion.) As they were proceeding down the stairs, Miss Palmberger indicated the point where she had fallen on the stairway. The respondent warned her not to talk. They continued down to the express train platform, where the respondent conducted Miss Palmberger and Miss Bender to a spot she had selected and told them to remember that was where the accident occurred as Miss Palmberger was pushed by the crowd while entering the train. She demonstrated how her foot could be caught between the platform and the train. She further told them to state that Miss Bender helped Miss Palmberger at the time of the accident. The respondent told Miss Bender to say that she was on the way down-

town to buy something when the accident happened and that Miss Palmberger left the train at Grand Central Station but she continued downtown. She told Miss Bender to tell this story so often that she herself would believe it.

Before the group left the subway station, Mr. Paul Munker, the husband of Miss Bender, stated to the respondent and the latter's husband, Mr. Paley, that he did not want his wife mixed up in the matter, whereupon Mr. Paley in the presence of the respondent said, " Don't worry, as long as your wife sticks to her story as we tell her she will be all right, there is nothing to worry about." Mr. Munker then stated his wife would never go to court to testify, whereupon Mr. Paley said there would be a settlement, so that she would not be compelled to go to court.

Some time thereafter Miss Palmberger told the respondent and Mr. Paley that she was having trouble with her mother-in-law to whom she had told the truth and described how the injury occurred, but had stated that the respondent intended to fix up the case so that she would get more money out of it. It appears that her mother-in-law did not like Miss Palmberger because she believed that the latter had entrapped her son into marrying her. The respondent and Mr. Paley told Miss Palmberger to mix up her mother-in-law so that she would not know how the accident did occur and that she should continue to tell her that she fell into the space between the platform and the train, as respondent had instructed her.

When the case was about to be reached on the calendar, Mr. Paley was told by the assistant attorney of the Interborough Rapid Transit Company that there were suspicious circumstances surrounding the case; that the mother-in-law of the plaintiff had told officials of the company that " this is a made up case from beginning to end." Mr. Paley then induced the mother-in-law to call at his office and had her sign a recanting affidavit or confession setting forth that she lied in her statements to the investigator of the railroad company.

Miss Palmberger's husband, who was present when his mother signed the statement, told Mr. Paley that the language used in the statement was strong and that his mother would never have signed it if she knew what it contained. His mother did not read the statement, nor was it read to her. Her son told her she was signing it as a favor. He induced his mother, who could not read English very well, to sign it because Mr. Paley stated that if his mother would " recall " what she had said to the investigator a settlement of the case could be made with the railroad company. The mother-in-law of Miss Palmberger testified she

knew she was signing an untrue statement and that her son induced her to sign it. Upon the basis of this affidavit recanting statements given to an investigator of the railroad company, the latter settled the case of Miss Palmberger for $3,500.

The matter was subsequently brought to the attention of the district attorney, whereupon Miss Palmberger told the respondent she would tell the truth because Miss Bender had already done so. According to Miss Palmberger, the respondent said, " Stick to the false story, no matter what they do, even they make you swear " at the district attorney's office.

The aforesaid facts were established by the testimony of Miss Palmberger, Miss Bender and their respective husbands, as well as by the mother-in-law of Miss Palmberger. In addition, there is corroboration of the testimony of Miss Palmberger's mother-in-law in that given by two investigators of the Interborough Rapid Transit Company, who had called upon her in connection with the case.

The referee concludes his report upon this charge with the following statement: " I can state that in my entire career I was never more confident than I am in this proceeding that I have arrived at a correct decision and correctly judged witnesses and their credibility. I feel as certain as if I had heard the respondent and her husband confess that the facts are true as I find them. Nor have I ever been called upon to decide a matter in which I encountered and there were palpable, at least to me, so many devices resorted to, oral and written, and so much stratagem displayed to conceal and camouflage fraud as were resorted to by the respondent and her husband from the initiation of the conspiracy, then in its execution in the face of the danger of exposure, and finally, in the preparation and bolstering up of a fabricated defense."

The record herein conclusively sustains the finding by the referee that the respondent has been guilty of professional misconduct. Her conduct in this, her first case, is a sad commentary upon the ethics of some of the persons now gaining admission to the Bar.

The respondent should be disbarred.

O'MALLEY, GLENNON, UNTERMYER and DORE, JJ., concur.

Respondent disbarred.